IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AGGEE VEILLARD, #257496         *
        Plaintiff,
  v.                              *  CIVIL ACTION NO. WMN-04-3926

CORRECTIONAL MEDICAL SERVICES,  *
  INC.
        Defendant.              *
                                    ***

**MEMORANDUM**

I. Background

On or about December 11, 2004, Plaintiff filed this 42 U.S.C. § 1983 civil rights action for injunctive relief and damages against Correctional Medical Services, Inc. ("CMS"), the private prison health contractor at the Maryland Correctional Training Center ("MCTC"), alleging that he had not been provided medical treatment for continuing stomach and bowel problems.[1]

Defendant CMS has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Paper No. 22. Plaintiff has filed his Oppositions to the dispositive motion. Paper Nos. 28 & 30. Oral hearing is not required to resolve the constitutional issues presented in the matter. *See* Local Rule 105.6. (D. Md. 2004). For reasons which follow, the Court shall grant Defendant's Motion.

II. Standard of Review

    Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 473

---

[1] Plaintiff was transferred from MCTC to the Eastern Correctional Institution in February, 2005. Paper No. 11. He was released from the Maryland Division of Correction into the custody of the Department of Homeland Security ("DHS"). Paper Nos. 15 & 16. According to the DHS, as of November 14, 2005, Plaintiff is housed in its custody at the Wicomico County Detention Center ("WCDC"). Consequently, any request for injunctive relief against CMS, the health care provider during Plaintiff's confinement at MCTC, has been rendered moot.

(4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal conclusions or pleaded facts, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to particular acts or practices. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In this case, it is plaintiff's responsibility as the non-moving party to respond to the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

III. <u>Analysis</u>

Defendants assert that Plaintiff's Complaint is subject to dismissal because: (i) Plaintiff's *respondeat superior* claim against CMS fails as a matter of law; (ii) Plaintiff's claims of the failure to provide medical care prior to December, 2001, are barred by the applicable statute of limitations; and (iii) Plaintiff was provided constitutionally adequate medical care. Paper No. 22. In his Opposition responses, Plaintiff asserts that his medical needs were serious and CMS disregarded or

failed to address those needs. Paper No. 28. He further complains that he was evaluated at MCTC without benefit in that while several tests were conducted, none resulted in a diagnosis of Plaintiff's problems. *Id*. Plaintiff further asserts that once transferred out of MCTC, he received further testing from medical personnel at ECI and the WCDC which showed a mass on his abdomen and a positive test result for H. Pylori. *Id*. He asserts that he was placed on medications at WCDC to treat the H. Pylori infection. Paper Nos. 28 & 30.

Turning to the dispositive issues, it is clear that Plaintiff's allegations against the named Defendant are subject to dismissal. To the extent that Plaintiff seeks to implicate CMS based solely upon vicarious liability, otherwise known as the doctrine of *respondeat superior*, the law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D. Va. 1991). Even were this court to examine the underlying claims, however, it would find that complaint is time-barred in part under § 1983 and otherwise subject to dismissal for Plaintiff's failure to project evidence that MCTC medical personnel were deliberately indifferent to his medical problems.

In enacting 42 U.S.C. § 1983 Congress determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law. *See Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984). Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law. *See id*., at 49; *Chardon v. Fumero Soto,* 462 U.S. 650, 655-656 (1983); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975). The tradition of borrowing analogous limitations statutes is premised on a congressional decision to defer to "the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." *Wilson*

*v. Garcia*, 471 U.S. 261, 271 (1985).[2]  Consequently, upon review of Maryland's limitations provisions, it appears that Maryland's general three-year statute of limitations for civil actions is most applicable to the case at bar.  *See* Md. Code Ann., Cts. & Jud. Proc., § 5-101; *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir.1995) (en banc).

Although the state statute of limitations applies, the time of accrual of the action is a federal question.  *See Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988); *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975).  The cause of action accrues either when Plaintiff has knowledge of his claim or when he is put on notice--*e.g.*, by the knowledge of the fact of injury and who caused it--to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim.  *See Nasim*, 64 F.3d at 955.  Thus, the applicable statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id.*; *see also Brooks v. City of Winston-Salem*, 85 F.3d 178,181 (4th Cir.1996).  Here, at the latest, Plaintiff knew of his injuries in April of 2001, when he first complained of stomach and bowel problems.  Consequently, because Plaintiff filed the instant complaint on or about December 11, 2004, any allegations of medical deliberate indifference occurring prior to December 11, 2001, are time-barred.

Moreover, the record before the court establishes that medical personnel were not deliberately indifferent to Plaintiff's problems.  In order to state an Eighth Amendment constitutional claim for denial of medical care, Plaintiff must demonstrate that Defendants' acts (or failures to act) amounted to deliberate indifference to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The medical treatment rendered must be so grossly incompetent,

---

[2]  In *Wilson*, the Supreme Court decided that, for statute of limitation purposes, all § 1983 actions would be characterized as tort actions for the recovery of damages for personal injuries.  *See Wilson*, 471 U.S. at 265.

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). Deliberate indifference may be established by showing either actual intent or reckless disregard. *Id*. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff was transferred to MCTC on September 9, 2000. No history of stomach or bowel problems was indicated on his transfer forms. Paper No. 22, Exs. A & B. Plaintiff first complained of bowel problems on April 10, 2001. *Id*. He was seen by prison medical staff two days later. His abdomen was found to be soft and non-distended and he denied pain. Plaintiff stated that he had his last bowel movement the prior day. *Id*. He was directed to return to the dispensary as need. *Id*. Plaintiff's next complaint or sick-call request regarding his stomach occurred on July 23, 2002. He claimed he was experiencing pain in his stomach and had a digestive problem. *Id*. Plaintiff was evaluated on July 24, 2002. He indicated that he had not defecated for 48 hours and that he was having trouble passing what he had eaten. *Id*. Plaintiff's abdomen was soft and non-tender and bowel sounds were present in all four quadrants of his abdomen. *Id*. He was provided a liquid laxative and referred to see the physician assistant ("P.A."). *Id*.

On July 30, 2002, Plaintiff was examined by P.A. Hamu for a claim that he only had a bowel movement once every four days. *Id*. Hamu noted that Plaintiff had active bowel sounds and that upon palpation, Plaintiff's abdomen was non-tender, soft, and without masses. *Id*. Hamu prescribed Metamucil to treat Plaintiff's constipation. *Id*.

Plaintiff offered no further complains of stomach or bowel problems until November, 2002, when he submitted a number of complaints of pain on his "left appendix," stomach pain, and pain on the left side of his abdomen. Paper No. 22, Exs. A & B. He was seen by MCTC nurses and a physician's assistant. *Id*. Again, Plaintiff was found to have active bowel sounds in all four quadrants and his abdomen was non-tender and soft. P.A. Taylor found, however, that Plaintiff had mild tenderness in his left lower quadrant, but without organomegaly. *Id*. Plaintiff refused a rectal exam. *Id*. Taylor's assessment was that Plaintiff was constipated and he was advised to eat and to increase his exercise and fluid intake. *Id*.

From December, 2002, to February, 2003, Plaintiff continued to complain of constipation and evacuation of hard black stool. *Id*. Examinations of his abdomen was normal and his Seracult cards were negative for signs of blood in his stool. *Id*. He was, however, referred to the Medical/Surgical Clinic for further evaluation in light of his chronic complaints of abdominal pain. On May 14, 2003, Plaintiff was seen by Dr. Stanley Hoffman, who ordered Metamucil and Colace and advised Plaintiff to return to the Medical/Surgical Clinic as needed. *Id*.

In June, 2003, Plaintiff filed letters and sick-call complaints asserting that the medication prescribed by Dr. Hoffman was not working. *Id*. He was seen by prison nurses, who encouraged him to increase his fluid intake and to continue with the medications. *Id*. Plaintiff was scheduled for a follow-up in the Medical/Surgical Clinic and evaluated by Dr. Hoffman on July 2, 2003. Dr. Hoffman reordered the laxative and stool softener and added Ducolax suppositories to Plaintiff's medication regimen. *Id*.

On August 27, 2003, however, Plaintiff filed a sick-call request complaining that his stomach problem was "getting more complicated." *Id*. He was evaluated by Dr. Odunsi on August 29, 2003, who found that Plaintiff had mild epigastric tenderness but a soft abdomen upon palpation. Paper

No. 22, Exs. A & B. Dr. Odunsi concluded that Plaintiff had dyspepsia (indigestion) and ordered Zantac. *Id*.

Plaintiff was reevaluated in the Medical/Surgical Clinic by Dr. Mbonu on September 3, 2003. *Id*. The Zantac prescription was discontinued and Colace was reordered. Dr. Mbonu also prescribed Amitriptyline (Elavil). *Id*. On September 15, 2003, Plaintiff turned in three Seracult cards, all of which were negative for blood in the stool. *Id*. He filed a sick-call request on September 16, 2003, however, complaining that his stomach had gotten worse since the Elavil had been prescribed. *Id*. Plaintiff was examined that day by a prison nurse, who found Plaintiff's abdomen normal upon palpation. *Id*. Plaintiff was next seen by Dr. Mbonu on September 25, 2003. *Id*. Again, an examination of Plaintiff's abdomen was unremarkable. Dr. Mbonu diagnosed Plaintiff with constipation. *Id*. He discontinued the Elavil, but continued Plaintiff's other medications and advised Plaintiff to increase his fluid intake. *Id*.

From October 20, 2003, to January 21, 2004, Plaintiff submitted additional sick-call requests complaining of continuing stomach problems. *Id*. He was examined by prison medical personnel on more than 4 occasions. His physical examination were all found to be unremarkable and he was provided laxatives. Plaintiff's complaints of chronic abdominal pain with unclear etiology resulted in his receiving an abdominal x-ray on January 23, 2004, which showed no bowel obstruction or masses. Paper No. 22, Exs. A & B.

Dr. Mbonu requested a second opinion on March 26, 2004, and on April 3, 2004, Dr. Lakew, the Medical Director for the Hagerstown prison complex, examined Plaintiff. *Id*. The physical examination revealed nothing unusual. Dr. Lakew ordered Lactulose, a type of laxative, and a stool test for ova and parasites to determine if Plaintiff had a parasitic infection. *Id*. Plaintiff was re-evaluated by Dr. Mbonu on April 30, May 15, and June 23, 2004, in the Internal Medicine Clinic.

Paper No. 22, Exs. A & B. Further testing was ordered. The record shows that: Plaintiff's stool culture came back negative for infectious bacteria; an abdominal CT scan showed no abnormalities with Plaintiff's bowels, kidneys, spleen, pancreas, and adrenal glands; and an MRI study of Plaintiff's liver revealed an otherwise normal liver, with a cyst.[3] *Id.*

Plaintiff continued to submit sick-call requests, complaining of pain in his upper and lower left quadrant, vomiting blood, dizziness, and loss of consciousness on one occasion. *Id.* Plaintiff was evaluated by MCTC medical personnel on each occasion, given laxatives and placed on a clear liquid diet. *Id.* No vomitus or abnormal findings were noted in the physical examinations and it was suggested that Plaintiff keep a diary of his food intake. *Id.*

On July 26, 2004, Plaintiff received his annual physical, conducted by Dr. Mbonu. *Id.* Plaintiff continued to complain of sharp, non-radiating abdominal pain. *Id.* Dr. Mbonu noted the findings of the CT and MRI, as well as the normal physical examinations, and concluded that Plaintiff had chronic abdominal pain of unknown etiology. *Id.* Dr. Mbonu explained to Plaintiff that liver cysts are usually benign, require no treatment, and that he would follow up with additional studies if needed. *Id.* Mbonu also ordered the re-start of the Elavil prescription based upon his theory that the abdominal problems could be somatically related to depression. *Id.*

On August 8, 2004, Plaintiff was brought to the Dispensary for immediate evaluation based upon his complaint of hiccoughing and vomiting blood. *Id.* Plaintiff's physical examination was unremarkable. He was told to save a specimen of his emesis for testing. *Id.* Dr. Mbonu ordered that Plaintiff's stool be tested for occult blood every day for three days. *Id.* Plaintiff was provided three cards to check for occult blood in his stool. *Id.* Two of the three cards tested positive for occult blood. *Id.* Plaintiff subsequently filed additional sick-call requests in September of 2004,

---

[3] According to Dr. Mbonu, the cyst does not affect Plaintiff's liver function. Paper No. 22, Ex. A.

complaining of stomach pain and requesting a colonoscopy because of his vomiting and bloody stool.  Paper No. 22, Exs. A & B.

Dr. Mbonu evaluated Plaintiff in the Medical/Surgical Clinic on September 22, 2004.  *Id*. Again, Mbonu noted the testing Plaintiff had received and referred him to another physician for a second opinion.  *Id*.  October 2, 2004, Plaintiff was seen by Dr. Abebe Imiru.  *Id*.  Dr. Imiru noted Plaintiff's subjective claims of pain, made findings from his physical evaluation of Plaintiff and prior test results, and concluded that Plaintiff had irritable bowel syndrome ("IBS") Dr. Imiru advised Plaintiff to eat more vegetables and recommended a psychiatric evaluation if Plaintiff's mood was affected by his condition.  *Id*.

Dr. Mbonu evaluated Plaintiff in the Internal Medicine Clinic on November 5, 2004.  *Id*.  He noted that all of Plaintiff's tests had been non-diagnostic and his physical examination was unchanged from previous examinations.  *Id*.  Dr. Mbonu's assessment was to rule out IBS, and he recommended following the plan suggested by Dr. Imiru.  *Id*.   On December 12, 2004, Plaintiff submitted a sick-call form to be seen for his continuing stomach problems.  *Id*.  He complained that the pain got worse after he ate and that he had self-discontinued the Zantac because it caused his blood pressure to elevate.  *Id*.  An MCTC nurse gave Plaintiff a dose of an antacid and referred him to see a P.A.  *Id*.  Plaintiff saw P.A. Taylor on December 27, 2004.  *Id*.  She performed a rectal exam, which was negative for blood.   An H. Pylori test was performed to rule out peptic ulcer disease.  *Id*.  The medical record indicates that laboratory results were within normal limits.  *Id*. Taylor encouraged Plaintiff to take the Zantac and to return to the clinic if the Zantac did not work or if his blood pressure increased.  *Id*.  On or about February 5, 2005, Plaintiff was transferred out of MCTC and has not been under the care of CMS since that date.  Paper No. 22, Exhibit A.

Plainly, each and every time Plaintiff filed a sick-call request from 2001 to 2004, MCTC medical personnel responded to his complaints of abdominal pain. He was repeatedly examined by nurses, P.A.s and physicians,[4] seen in the MCTC Dispensary and in various medical clinics, and received extensive testing in the form of blood and stool analysis for parasites and infection, a CT and MRI, and Seracult cards for occult stool determinations.  Tests were within normal limits, with the exception of a cyst found on Plaintiff's liver and positive findings for occult blood in August of 2004.  Further, Plaintiff was placed on a regimen of laxatives, stool softeners, and digestive medications in an effort to alleviate his symptoms.  He was diagnosed and treated for possible indigestion and IBS; otherwise, his abdominal pain was found to be of unclear etiology.  There is no showing that MCTC medical personnel wilfully ignored his complaints and intentionally denied him care for a known serious ailment.  Plaintiff may disagree with the conservative course of treatment adopted by medical personnel, but his dissatisfaction with the care provided to him while housed at MCTC is not sufficient to support a claim under 42 U.S.C. § 1983.[5]

IV.   Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss or for Summary Judgment

---

[4]   Indeed, Plaintiff was seen by several nurses, two P.A.s, and at least four different physicians.

[5]   Defendant's records show that a test conducted at MCTC for H. Pylori was found to be within normal limits in January of 2005. Plaintiff complains that he tested positive for H. Pylori in June, 2005, while housed at the WCDC, and that the January, 2005, H. Pylori test result is not documented in Defendant's record. Defendant's exhibits show that the test result is documented in a progress note. Plaintiff's allegation does not raise a genuine issue of material fact as to whether prison officials acted with deliberate indifference to a serious medical need. Any allegation of misdiagnoses does not raise Plaintiff's claim to a constitutional level. *See Estelle v. Gamble*, 429 U.S. at 105-06; *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

shall be granted.  A separate Order follows.

                                                                                      /s/

Date: November 30, 2005              _____
                                                              William M. Nickerson
                                                              Senior United States District Judge